UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:23-CR-281-SDJ |
| | § | |
| MALIK OGLETREE (2) | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the United States' Emergency Motion to Stay and Appeal of United States Magistrate Court's Order of Release. (Dkt. #11). The Court previously granted the Government's Motion to Stay. (Dkt. #12). The Court, having considered the Government's Motion, the record, and the applicable law, **GRANTS** the Motion and the relief requested.

## I.

Ogletree and two codefendants are charged with violating 18 U.S.C. §§ 1951 and 2, Hobbs Act Robbery and Aiding and Abetting, as well as 18 U.S.C. §§ 1201(a) and 2, Kidnapping and Aiding and Abetting. (Dkt. #1). These charges stem from Ogletree's alleged participation in a home-invasion robbery and kidnapping. During the robbery, the victim was bound with zip-ties and duct tape, threatened with violence, and detained for several hours while the defendants stole thousands of dollars and other valuables.

Following his indictment, Ogletree was arrested in the Northern District of Georgia and appeared before a magistrate judge for a pretrial detention hearing. The magistrate judge denied the Government's motion seeking detention and released

1

Ogletree on bond conditions. The Government immediately appealed, and this Court stayed the order releasing Ogletree. Ogletree has remained in custody and was transferred to the Eastern District of Texas. The Court held a hearing on the matter of pretrial detention. (Dkt. #28).

## II.

Under 18 U.S.C. § 3145(a)(1), when a defendant is ordered released by a magistrate judge, the Government may file with the district court a motion for revocation of the release order. The district court reviews the magistrate judge's order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

## III.

The Court, having held a pretrial detention hearing and determined that no combination of release conditions can reasonably assure public safety and the appearance of the Defendant, finds that Ogletree must be detained pending his criminal trial.

## A.

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. Generally, a court must release a defendant on bail on the least restrictive condition or combination of conditions that will reasonably assure the defendant's appearance when required and the safety of the community. *See* 18 U.S.C. § 3142(c)(1)(B).

A judicial officer may order a defendant detained pending trial only upon satisfying two prerequisites. First, the officer must hold a hearing pursuant to a circumstance listed in 18 U.S.C. § 3142(f). *United States v. Byrd*, 969 F.2d 106, 109–10 (5th Cir. 1992) (per curiam) ("Detention can be ordered, therefore, only in a case that involves one of the six circumstances listed in (f) . . . .") (internal quotation marks omitted).[1] Second, after a hearing, the officer must determine whether the Government has shown by a "preponderance of the evidence that 'no condition or combination of conditions will reasonably assure the appearance of the person,' or by clear and convincing evidence that 'no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community.'" *United States v. Acosta-Leyva*, 751 F. App'x. 594, 595 (5th Cir. 2019) (quoting 18 U.S.C. § 3142(e)); *see also Rueben*, 974 F.2d at 586 (explaining that, "[f]or pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the

---

[1] At the time *Byrd* was issued, there were only six circumstances listed in Section 3142(f), subsections 3142(f)(1)(A)–(D) and 3142(f)(2)(A)–(B). Subsequently, in 2006, the Bail Reform Act was amended to include a seventh circumstance, section 3142(f)(1)(E). *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, § 216, 120 Stat. 617 (2006).

defendant's appearance, or the safety of others or the community, is sufficient; both are not required").

Upon satisfying both prerequisites, a judicial officer may order a criminal defendant detained pending trial. *See United States v. Okhumale*, No. 20-10387, 2020 WL 2517083, at *2 (5th Cir. May 15, 2020) (per curiam) (reaffirming that pretrial detention requires "the presence of one of the circumstances outlined in § 3142(f) *and* a determination under § 3142(e) that [] no conditions imposed could either assure the appearance of the defendant or the safety of the defendant and community") (emphasis in original) (citing *Byrd*, 969 F.2d at 109–10).

## B.

Section 3142(f) provides seven circumstances under which a judicial officer must hold a hearing to determine whether any combination of conditions will reasonably assure the defendant's appearance and the safety of the community. Under Section 3142(f)(1), "upon motion of the attorney for the Government," the judicial officer must hold a hearing in a case involving "a crime of violence." 18 U.S.C. § 3142(f)(1)(A).

The kidnapping and Hobbs Act robbery charges against Ogletree are "crime[s] of violence" under 18 U.S.C. § 3142(f)(1)(A). *See United States v. Obregon*, 371 F. App'x. 556, 559 (5th Cir. 2010) (affirming that kidnapping is a "crime of violence"); *United States v. Madrid-Paz*, No.22-20397, 2023 WL 7013354, at *2 (5th Cir. Oct. 24, 2023) (affirming that Hobbs Act robbery is a "crime of violence"). The Court's

detention hearing was therefore both authorized and required by 18 U.S.C. § 3142(f)(1).

**C.**

Having held a hearing pursuant to Section 3142(f), the Court must next determine whether any combination of conditions can reasonably assure Ogletree's appearance and the safety of the public. Section 3142(g) sets out the factors a court must consider in making that determination: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3141(g); *see also Acosta-Leyva*, 751 F. App'x. at 595.[2]

The Court now considers each of these factors.[3]

---

[2] In some cases, a rebuttable presumption arises that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The circumstances giving rise to a rebuttable presumption are listed in Section 3142(e)(2)–(3). None applies in this case.

[3] The Court has reviewed the record and the parties' filings, including all the materials and testimony considered by the magistrate court. In addition to written submissions, at the detention hearing the Government presented the testimony of Special Agent Thomas Clements.

**1.**

At the outset, the nature and circumstances of the offenses charged against Ogletree weigh in favor of detention. Ogletree has been indicted for his participation in two serious offenses. Count One charges Ogletree with Hobbs Act robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2, a crime that carries up to twenty-five years in prison. In Count Two, Ogletree is charged with kidnapping and aiding and abetting, in violation of 18 U.S.C. §§ 1201(a) and 2, a crime that carries a potential life sentence. The severity of Ogletree's potential sentence, particularly a potential life sentence, provides Ogletree a strong incentive to flee. *See*, *e.g.*, *United States v. Ellis*, 646 F. App'x 889, 890 (11th Cir. 2016) (affirming the propriety of lower court's determination that a potential life sentence created an incentive to flee); *United States v. Zhang Xiao Dong*, No. 3:17-CR-546-L, 2017 WL 5629513, at *3 (N.D. Tex. Nov. 22, 2017) (concluding that possible prison sentence of forty-six to fifty-seven months presented motive to flee).

The circumstances of the offenses charged also weigh in favor of detention. At the hearing, Special Agent Clements testified to the disturbing and violent circumstances of the crime. According to Special Agent Clements, codefendant Fox identified the victim as a successful e-sport personality, learned of the victim's high income, and specifically befriended the victim on these bases. Fox then used his friendship with the victim to gain access to the victim's apartment under the guise of playing video games together. He stayed with the victim for several days before committing the instant offenses.

6

Once the victim was asleep, Fox allowed his two codefendants, Malik Ogletree and Aaliyah Wright, into the victim's apartment.[4] Ogletree and Wright tied Fox up to make it appear that he was also a victim. Ogletree, with the help of Wright, then accosted the sleeping victim, removed his pants and dragged him from his bedroom to the living room. There, Ogletree and Wright zip-tied and duct-taped the victim's hands and feet and placed a bag over his face to obscure his view. The victim heard the Defendants discuss getting a firearm. At one point, one of the defendants told him: "Imma' blow your fucking head off!"[5] The victim was detained for roughly four hours while the Defendants used his electronic devices to access his accounts and steal thousands of dollars, as well as approximately $23,000 worth of jewelry and other valuables. The circumstances of these offenses are troubling, as they involved both violence and threats of violence against the victim that occurred over a number of hours.

Accordingly, the nature and circumstances of Ogletree's charged offenses and related conduct amply demonstrate that his release would present a significant danger to the public and that he faces a lengthy sentence providing a heavy incentive to flee. In addition, Ogletree's use of interstate travel to commit these offenses demonstrates his potential to travel or flee in the future.

---

[4] Special Agent Clements testified that Ogletree traveled to Texas for the sole purpose of committing the offenses.

[5] As discussed below, a firearm was found in Fox's vehicle parked within walking distance of the victim's apartment. However, Special Agent Clements noted there is no evidence a firearm was present at the victim's apartment during the offenses.

**2.**

The Court must also consider the weight of the evidence against Ogletree, although this factor is considered "to be of least importance in the detention determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

The Government produced significant evidence against Ogletree. Arguably most important is the victim's identification of Ogletree as one of the individuals who committed the robbery and kidnapping. The victim had met Ogletree previously and recognized him when Ogletree's mask slipped off. Beyond the victim's identification of Ogletree, there is additional evidence of Ogletree's participation in the crimes before the Court.

On the night of the kidnapping, Cash App payments from the victim's accounts were made to accounts controlled by Ogletree.[6] Fox's vehicle, located within walking distance of the victim's apartment, contained zip ties (like those used during the commission of the offenses), Delta airline boarding passes for dates and locations not associated with this incident but bearing the name of Ogletree, and a Smith and Wesson 9-millimeter handgun.

The Government also produced evidence that codefendants Ogletree and Wright stayed at a Comfort Suites hotel in The Colony, Texas, a location within a

---

[6] Though Ogletree contended that it is speculation to tie this Cash App account to him, the record supports this conclusion because the referenced Cash App account is associated with Ogletree's cell phone number and email address and is also linked to an alias used by Ogletree.

short drive of the victim's residence, at the time the kidnapping and robbery occurred. Special Agent Clements testified that a subpoena of Priceline records confirmed that Ogletree booked a room the night before and night of the crimes. Codefendant Wright's iCloud account had a photograph of a person face down in the hotel room[7] with zip-ties and duct tape on his hands and feet. The photograph was taken the day before the robbery/kidnapping, suggesting that Ogletree and Wright were preparing their method for restraining the victim. The brand of duct tape in Wright's photograph was the same brand used on the victim, and the posture of the test-subject matches the victim's description of his own constraints.

Special Agent Clements further testified that surveillance footage from the day of the offenses depicts two people being dropped off in a parking lot next to the victim's apartment complex at approximately 2:42 AM. They proceeded to a parked vehicle on the west side of the apartment building—the same location where Frisco PD recovered Fox's vehicle several days later. At approximately 3:16 AM, the two people walked southbound towards the apartment complex. And at approximately 7:07 AM, the same two people were recorded returning to the parking lot. They were both picked up around 7:14 AM.

Lyft records show that a user with Ogletree's phone number and email address requested a ride from Ogletree's hotel to the above-mentioned parking lot and was dropped off at 2:41 AM. That same user was picked up at the same spot at 7:14 AM

---

[7] Special Agent Clements testified that an officer confirmed the photograph was taken in the same hotel that Ogletree and Wright stayed in.

before being dropped off at DFW airport. Electronic records reveal that Ogletree and Wright both took a commercial airline from DFW Airport to Atlanta immediately after the offenses occurred.

Thus, the evidence presented shows that Ogletree took a Lyft from his hotel— where he and Wright practiced restraining the victim—to the scene of the crime, then from the scene of the crime to the airport. This is corroborated by video footage.

The weight of evidence against Ogletree weighs in favor of detention.

**3.**

Ogletree's history and characteristics are neutral regarding pretrial release. Relevant history and characteristics include "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Ogletree has minimal criminal history. His only prior offense is a misdemeanor for driving without a license. He has lived in the state of Georgia for his entire life. Since 2005, he has resided in the metro Atlanta area. Ogletree has important family ties there, including two children. He pays child support, $400 a month, but his wife[8]

---

[8] The presentence report, (Dkt. #17), notes that Ogletree and his wife have been separated since October of 2023.

testified that he always provides more if she needs it. She also testified that Ogletree is a very involved father and that he would never abandon his children.

However, at the age of 25, Ogletree's employment history is extremely limited, as he has only identified jobs starting in 2023. Ogletree reports that he owns a car detailing company that brings in $4,000 per month. He also reports that his work for a roofing company averages around $3,000 per month in income. Despite only $500 in monthly expenses and an estimated monthly cash flow of $6,500, Ogletree's minimal employment history, which has not been verified, is concerning.

Ogletree's mother gave testimony before the magistrate judge and indicated that she would be willing to serve as a third-party conservator should Ogletree be released. The Court notes, however, that Ogletree was living with his mother during the time he appears to have committed the instant offenses. The Court is concerned that Ogletree's mother would not be able to effectively act as a conservator for Defendant, and Ogletree has suggested no other person who could take on this responsibility. In this regard, the Court also notes that the most recent pretrial services evaluation recommends that Ogletree be detained.

Though Ogletree has significant family ties and limited criminal history, his circumstances and characteristics, considered in totality, are neutral concerning detention.

**4.**

Lastly, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Ogletree's release. As

established above, the Government has provided information showing that Ogletree conducted a carefully planned, violent kidnapping and robbery. Ogletree's willingness to undertake a violent kidnapping and to travel interstate to conduct such crimes, potentially with the aid of a firearm, suggests that he presents a danger to others as well as the community.

\* \* \* \*

The Court finds that, having reviewed the 3142(g) factors, the Government has proven by clear and convincing evidence that no combination of conditions could reasonably assure the safety of the public pending trial. The Government has also demonstrated, by a preponderance of the evidence, that no combination of conditions can reasonably assure Ogletree's appearance for any pretrial proceedings and trial. For these reasons, Ogletree must remain detained pending trial.

## IV.

For the foregoing reasons, it is **ORDERED** United States' Appeal of United States Magistrate Court's Order of Release, (Dkt. #11), is **GRANTED**. The magistrate judge's order of release is **REVOKED.** Ogletree shall remain in custody pending trial.

**So ORDERED and SIGNED this 30th day of May, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE